[Cite as *Scott v. Universal Utils., Inc.*, 2017-Ohio-4341.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Gloria Scott, et al.                                    Court of Appeals No. WD-16-064

　　　　Appellant                                    Trial Court No.  2015CV0440

v.

Universal Utilities, et al.                         **DECISION AND JUDGMENT**

　　　　Appellees                                    Decided:  June 16, 2017

* * * * *

Michael D. Portnoy, for appellant.

John A. Borell, Jr., for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This matter is before the court on appeal of the November 4, 2016 judgment

of the Wood County Court of Common Pleas which granted summary judgment in favor

of appellees, Universal Utilities, Inc., Friendly Village Limited Partnership, Meadows of

Perrysburg, LLC, and Choice Properties, Inc., in appellant Jill Smith's[1] action for damages and request for class certification relating to appellees' water and sewer billing practices. Because we agree that no issues of fact remain, we affirm.

{¶ 2} Appellant, Jill Smith, is a resident of appellee, Meadows of Perrysburg, LLC, a mobile home park in Perrysburg, Ohio. Appellee, Friendly Village Limited Partnership, is also a mobile home park in Perrysburg, Ohio. The parks are managed by appellee, Choice Properties, Inc. Appellee, Universal Utilities, is the water and sewer billing company for the mobile home parks. The residents of the parks are supplied water and sewer services through the Northwestern Water and Sewer District ("the District") which provides water for several townships in Wood County, Ohio.

{¶ 3} Each mobile home park has a main water meter that measures the amount of water provided by the District. Each mobile home lot has its own meter to measure water usage by the individual residents. The parks, through Choice Properties, pay the water and sewer amounts billed by the district. In turn, Choice Properties, through Universal, bills the individual residents.

{¶ 4} This action commenced on August 18, 2015, with plaintiff-appellant Jill Smith and then-plaintiffs Gloria Scott and Jamie Clark's filing of a complaint and request for class certification against appellees. The complaint stated that the matter was being brought by plaintiffs as representatives for not less than 250 class members, residents of

---

[1] Although the trial court action and the appeal were filed on behalf of "appellants," appellant Smith is the only remaining named appellant and will be referred to singularly.

2.

appellees' mobile home parks, who were overcharged for water and sewer services. The complaint alleged breach of the lease agreements by violating state and federal law and failing to bill residents for actual water usage, a violation of the Ohio civil RICO statute, R.C. 2923.32(A)(1), and a violation of the Ohio Consumer Sales Practices Act, R.C. 1345.02 and 1345.03.

{¶ 5} Plaintiff Gloria Scott withdrew from the action on January 26, 2016; plaintiff Jamie Clark was dismissed by agreement of the parties on June 2, 2016. The case then proceeded with appellant as the sole plaintiff and purported class representative.

{¶ 6} On May 2, 2016, appellant filed a Civ.R. 23 motion to certify a class consisting of "residents of both Friendly Village mobile home parks and the Meadows of Perrysburg since 2013 who paid a water or sewer bill administered by Choice Properties and Universal Utilities." Appellant further indicated that she believed that the class would exceed 200. Appellant asserted that the only question of all the potential class members was: "Did Choice Properties and Universal Utilities charge the members more for water and sewer services than the law permits?" Finally, appellant argued that even though the individual residents may have varying determinations as to overpaid amounts, the method of determining said amounts would involve a review of standardized billing practices.

{¶ 7} On July 8, 2016, appellees filed a motion for summary judgment and a joint memorandum in support of summary judgment and opposing class certification.

3.

Appellees, relying on the affidavits of Joni Edgington, bookkeeper for Universal, and Cindy Wilcox, district manager for Choice Properties, argued that despite appellant's claims that she is overpaying for water, Choice Properties does not add a sur-charge to the rates it is charged by the District. Conversely, the affidavits alleged that Choice Properties suffered a sizeable monetary loss while attempting to recoup its outlay for the services during the relevant time period. Further, as to billing practices, the affidavits indicated that customers are charged per 100 cubic feet of use. In other words, as is industry standard, customers are charged in 100 cubic feet increments only after they use the entire 100 cubic feet.

{¶ 8} Appellees generally argued that appellant lacked factual support as to each of her claims. Pointing to appellant's deposition, appellees confirmed that appellant had asserted the following four reasons she believed she was being overcharged for water and sewer: (1) she was paying more for water than her brother who also lives in Perrysburg, Ohio; (2) her water bill fluctuates; (3) in January 2015 her pipes burst, she had a $6 water bill for two months then it increased to $120-$150; and (4) variations in water bills among neighbors. Appellees further asserted that appellant admitted to having no facts to support any of her claims and that she was just "guessing."

{¶ 9} Appellees further disputed the claims of overcharges by the way of administrative, management, and/or miscellaneous fees by providing copious billing statements and spreadsheets detailing when and why any additional charges were billed. Finally, as to work orders for repair of broken meters and the claim that such repairs

4.

evidenced that the meters were inaccurate, appellees contended that the issues were with the transmitters, not the meters. In other words, the meters were still recording accurate water usage, but that usage was not being communicated back to Universal.

{¶ 10} In response, appellant argued that affiant Joni Edgington "brazenly committed perjury" by stating that the water meters were accurately calculating actual water use. Appellant proceeded to argue that appellees failed to "provide a scintilla of evidence Plaintiff Smith's water meters were accurately calculating actual water use during the time period in question." Appellant further claimed that "[b]ecause Defendants failed to prove the Smiths' water meters accurately calculated actual water use let alone less than their actual water use, Defendants have no undisputed proof the Smiths or any resident were billed for actual water use, as required by the lease agreements."

{¶ 11} In support of her arguments, appellant attached the affidavit of Michael Plunkett, an engineering consultant and mechanical engineer. Plunkett stated that he was asked to provide an expert opinion of the "working efficiency" of appellant's Sensus SRII water meter that had been installed at her residence since 2013. He also reviewed work orders, bills, affidavits, discovery responses, and depositions relating to the case.

{¶ 12} Mr. Plunkett observed the testing of appellant's water meter and stated that it "did measure accurately within specifications." Plunkett asserted, however, that the water bills were inaccurate because "[e]very single bill indicates the actual water usage ended in the 100th cubic foot" and that the bills widely fluctuated. Plunkett further noted

5.

that he reviewed approximately 300 work orders which represented broken or clogged meters or broken transmitters. Finally, Mr. Plunkett contended that approximately 63 residents were illegally charged for water use when their meters were broken.

{¶ 13} In response, appellees argued that critical to appellant's case, her opposition failed to demonstrate that she was overcharged for water. Expert Plunkett's affidavit did demonstrate that appellant's meter was working properly and that, if anything, residents were undercharged for water usage.

{¶ 14} The trial court agreed with appellees' arguments in granting their motion for summary judgment. Specifically, as to class certification the court concluded that although appellant asserted that 63 residents were overcharged for water based upon work orders and bills, her name and address was not included in the list. Appellant further alleged that residents were improperly charged various "administrative" or "management" fees which she failed to allege in her complaint. The court further noted that appellant's water and sewer bills failed to show that she was ever charged such a fee. The court then concluded that appellant failed to demonstrate that she was an appropriate class representative.

{¶ 15} Turning to the merits of appellant's claims, the court concluded that no issues of fact remained based upon appellant's admission that she had no facts to support her claims, the clear establishment of Universal Utilities' billing practices which refute appellant's assertions, and appellant's expert's failure to demonstrate and appellant was

6.

overcharged for water or sewer or that her meter was inaccurate. This appeal followed with appellant raising three assignments of error for our review:

1. The grant of summary judgment was in error because Plaintiffs have clearly met the burden of establishing their claim that the lease agreements were breached by Defendants not charging them for actual water usage.

2. The grant of summary judgment was in error because Mr. Plunkett's Affidavit created genuine issues of material fact regarding whether Plaintiffs were accurately charged for water usage.

3. Plaintiff's Motion to Certify Class was improperly denied because all members of the class suffered the same damages from being overcharged for water usage due to Defendants' breach of contract and Ohio civil RICO violations.

{¶ 16} Appellant's first and second assignments of error dispute the trial court's summary judgment award and will be jointly addressed. We initially note that appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996 Ohio 336, 671 N.E.2d 241 (1996). Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. County Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Summary judgment will be granted only when there remains no genuine issue of

7.

material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 17} Appellant first argues that an issue of fact remains as to whether appellant was charged for her actual water usage as required by the lease agreement. Specifically, appellant argues she disputes "the accuracy of each and every bill and the Defendants' entire billing system." Appellant also references, as "proof of defendants' scheme to overcharge for water usage," Universal's alleged fraudulent billing practices in Missouri.

{¶ 18} Appellant also contends that the affidavit of her expert, Michael Plunkett, created a genuine issue of fact precluding summary judgment. Appellant contends that his affidavit demonstrates that the bills sent to appellant were false based on the fact that she was charged to the 100th cubic foot each month; thus, she and the other residents were not charged for "actual water use." Appellant further argued that Plunkett's

8.

affidavit showed that there were 300 work orders for broken meters or transmitters and that appellees failed to prove that the meters were ever checked for accuracy.

{¶ 19} Independently reviewing the arguments of the parties, we must agree with the trial court that appellant has failed to set forth any material issues of fact for trial. Appellant, in several instances, argues that appellees failed to prove that the meters were working accurately or that the bills were accurate. Appellant, as the plaintiff, has the ultimate burden of proof in this case. Further, in order to survive a summary judgment motion, appellant as the nonmoving party was required to demonstrate a triable issue of fact; she did not. Appellant admitted that she had no facts to base her arguments on. Further, the billing system, by the 100 cubic foot, is the industry standard and is billed only after its use. Finally, Plunkett himself admitted that appellant's meter was working properly. It is not appellees' burden to prove that appellant was being charged for actual use; that was appellant's burden. Appellant's first and second assignments of error are not well-taken.

{¶ 20} Appellant's third assignment of error contends that the trial court erred by denying appellant's motion to certify a class. Based on our disposition of appellant's first two assignments of error, we find that appellant failed to demonstrate the class-certification requirements under Civ.R. 23. Appellant's third assignment of error is not well-taken.

9.

**{¶ 21}** On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                     _____
                                                                JUDGE

Thomas J. Osowik, J.

                                      _____
James D. Jensen, P.J.                                                  JUDGE
CONCUR.

                                      _____
                                                                 JUDGE

10.